THE STATE v. MARCH JEFFERSON and SAM GORDON, *alias* WILLIE TAYLOR, Appellants.—64 S. W. (2d) 929.

Division Two, October 28, 1933.

*Roy McKittrick*, Attorney-General, and *James L. HornBostel*, Assistant Attorney-General, for respondent.

COOLEY, C.—Appellants herein and Henry Gordon, *alias* Willie Gordon, *alias* James King, all negroes, were convicted in the Circuit Court of Jackson County of murder in the first degree for the killing of Morris Kross. They were charged and tried jointly. The jury assessed the punishment of March Jefferson and Sam Gordon at death and of Henry Gordon at life imprisonment in the penitentiary. All were duly sentenced in accordance with the verdicts and the two first named have appealed. Henry Gordon did not appeal. Appellants have filed no brief in this court. The facts shown by the State's evidence are in substance as follows:

Morris Kross owned and conducted a small grocery and meat store at the corner of Seventeenth Street and Troost Avenue in Kansas City, Missouri. Between eleven and twelve o'clock in the forenoon of June 26, 1931, the three defendants, these appellants and Henry Gordon, went to the store for the purpose of robbing it. Sam Slotnick, a witness for the State, was in the store with Kross when they entered. Jefferson was armed with a revolver and Sam Gordon had a piece of iron gas pipe about eighteen inches long, L-shaped at one end. When defendants entered the store Jefferson had his revolver concealed and Sam Gordon carried the gas pipe partially concealed under his coat, one end, which was wrapped with paper, being seen by some of the witnesses as defendants entered. Jefferson ordered some pork chops and while Kross was preparing them for delivery drew and presented his revolver. While he held Kross covered Sam Gordon struck Slotnick on the head with the gas pipe, fracturing his skull and rendering him unconscious, and took from his person his pocketbook containing a small sum of money and some papers. Meanwhile, Henry Gordon rifled the cash register. It appears that Kross was giving indications of not submitting tamely to the holdup and Jefferson called to Sam Gordon to come and hit him with the gas pipe before he, Jefferson, had to shoot him. Gordon thereupon struck Kross two or more blows with the gas pipe, the first blow severely bruising Kross' hand which he had thrown up to protect his head, and the other or others fracturing his skull. Kross died as a result of his wounds several days later. Slotnick remained unconscious for a considerable time and was in the hospital about eight days but eventually recovered and testified at the trial. He identified the defendants. By other witnesses all three defend-

ants were seen and recognized as they entered the store and also when they hurriedly emerged shortly thereafter. They were arrested that night and after some questioning all admitted their guilt. The next day all signed written confessions. The details of what occurred in the store after Slotnick was struck and rendered unconscious were furnished by the written confessions and verbal statements which the State's evidence proved defendants had made.

The bloodstained gas pipe was left in the store where it was discovered immediately after the homicide. It was identified and shown to have been at the house where defendants had spent the night of June 25 and from which, on June 26, they had gone to the store. Slotnick's pocketbook, minus the money but still containing the papers, was found where evidence offered by the State indicated the defendants had secreted it after leaving the store. The cash register in Kross' store was looted, all the money it contained being taken. The written confessions of the three defendants were introduced in evidence. The defendants objected to their introduction on the ground that they had been extorted by brutal treatment and threats of certain police officers, which contentions defendants' testimony before the court in the absence of the jury tended to sustain. The State offered testimony in denial of that of defendants on this point and tending to show that the confessions were voluntary. Defendants saved no exceptions to the court's ruling admitting the confessions. The evidence pro and con on the question of whether the confessions had been made voluntarily was later given to the jury and the court gave instructions on that subject in submitting the case to the jury.

Defendant Henry Gordon testified, admitting that he went with the other defendants into the store but claiming that he bought some sugar and left the store, leaving appellants there, and that while he was in the store no assault nor anything unusual occurred. His testimony that he left the store alone and before appellants was contrary to all the other evidence on that point. Jefferson also testified. His testimony as well as that of Henry Gordon was to the effect that the trio, with some companions, spent the greater part of the night of June 25 in drinking and carousing and by morning were considerably intoxicated but sobered up sufficiently by the middle of the forenoon to be in possession of their faculties. . . . Jefferson further testified, however, that he and one Ed Jolly, at whose house they had spent the night, again went to drinking; that during the preceding night and again on the morning of the 26th, Jolly had suggested to him and the Gordons the robbery of the store, outlining the manner in which it could be successfully done but that they, he and the Gordons, had refused; that after taking a number of drinks with Jolly, into which he saw Jolly drop a powder which he thought was a drug, he, Jefferson, lost consciousness some time before eleven

o'clock and knew nothing more until that night when he was arrested and charged with the crime. According to his testimony his mind was a complete blank from the time he lost consciousness at Jolly's house before the crime was committed until that night after the event.

In rebuttal the State proved by several witnesses that Jefferson had been observed by them at different times during the afternoon and appeared to be sober and in full possession of his faculties. As above stated, he was also seen by witnesses entering and leaving the store and by Slotnick while in the store. Those witnesses did not testify to observing indications of intoxication in his appearance. Sam Gordon did not testify.

In this case we have nothing before us for review but the record proper, owing to the fact that the defendants did not comply with the statute in the filing of a motion for new trial. The record certified here shows that the verdicts were returned on October 7, 1931, and that they filed a joint motion for new trial on October 17, 1931, more than four days, exclusive of Sunday, after the verdicts were returned. The statute, Section 3735, Revised Statutes 1929 (4 Mo. Stat. Ann., p. 3275), requires motions for new trial in criminal cases to be filed before judgment and within four days after verdict if the term so long continues, if not, then during the term, "provided, that the court shall have power in any case for good cause shown to extend the time for filing such motion for a period not exceeding ten days from the date of the return of the verdict." ██ We have always held mandatory the requirement of the statute as to the time of filing such motions. The court, not the judge thereof, is given power to extend, for good cause shown, the four-day time limit. The court speaks by its record. We have held that the record must show affirmatively that the motion for new trial was filed in time, and that where it is not filed within the four-day period there must be a record showing that the court extended the time. [State v. Blanchard, 326 Mo. 965, 33 S. W. (2d) 937.] To the same effect, see State v. Schmitz (Mo.), 46 S. W. (2d) 539; State v. Harrison (Mo.), 29 S. W. (2d) 63; State v. Malone, 333 Mo. 594, 62 S. W. (2d) 909.] In the Blanchard case and the Schmitz case the motion was filed more than four but less than ten days after verdict without an order of record extending the time. In each case we held there was nothing for review but the record proper. In the Harrison case the motion was filed within ten days after verdict but after expiration of the time as extended by the court and we held it a nullity. The Malone case approves the principle of the other cases above cited.

In the instant case there is nowhere in the record any order or entry of any kind showing an extension of the time for filing motion for new trial. Absent such order of court, timely made, the four-day provision of the statute applies. We must therefore hold, following our uniform rulings on this subject, that the motion for

new trial was not timely filed, which leaves only the record proper for review. In that record we find no prejudicial error. The information, verdicts and judgments are sufficient and appellants were accorded allocution before the sentences were pronounced.

Although we hold that there is nothing before us for review but the record proper and adjudge the case accordingly, we have, in view of the gravity of the case and the fact that death penalties were assessed, carefully examined the bill of exceptions and the matters complained of in the untimely motion for new trial and find nothing therein that in our judgment would be ground for reversal had the motion for new trial been filed in time. Appellants appear to have been given a fair trial and the evidence, even without considering their confessions, clearly justified a finding of murder committed in the perpetration of robbery which, under the statute, is murder in the first degree. Under the evidence the jury could not well have found otherwise. The judgment of the circuit court as to each appellant must be and is affirmed. *Westhues* and *Fitzsimmons, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur. Date of execution of each appellant set for Friday, December 8, 1933.